UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT of VIRGINIA
Norfolk Division

| | |
|---|---|
| JUSTIN MICHAEL ISAAC, )<br>Petitioner )<br> )<br>vs. )<br> )<br>UNITED STATES OF AMERICA )<br>Respondent )<br>_____) | Criminal Case No.:<br>2:18cr00158 |

## AFFIDAVIT OF JUSTIN M. ISAAC [PETITIONER]

I, JUSTIN M. ISAAC, depose and state that the following FACTS are True and Correct under penalty of perjury, TO WIT:

2) I, Justin M. Isaac, state that this affidavit does also serve as a Declaration supporting my §2255 and Memorandum in Support.

3) I, Justin M. Isaac, state the facts in I through VI in the Memorandum In Support of §2255 Motion to vacate, set aside or correct sentence are hereby adopted herein.

4. I, Justin M. Isaac, state that I was appointed Counsel by the Clerk of Court on or about March 13, 2019, pursuant to the Criminal Justice act. The appointed CJA Attorney Brian Latuga.

5) I, Justin M. Isaac, state that I allege, based upon information and belief, that Court Appointed Counsel was CONSTITUTIONALLY INEFFECTIVE.

6) I, Justin M. Isaac, state that at the beginning of June 2019 I informed Counsel that I was not "Cali" and that HSI Jones as not reporting accurately regarding the events and misrepresentation of the sporadic buyer/seller association I had with Dante Davis. Counsel told me not to worry and that it was unlikely that many of these statements will be used against me in sentencing.

7) I, Justin M. Isaac, state that Latuga routinely drilled pleading guilty to the facts of the Government's case and flaunted the "Safety Valve" provision as a clear message (inducement) beneficial to pleading stating: "Because of the timelines, we do not have an opportunity to obtain full unfettered discovery and to simultaneously reap the

1

      benefits of a guilty plea...At this point, I believe that persisting in a Not Guilty plea is against your best interests....It is my opinion that a timely Guilty Plea to the indictment and a concentration on the Sentencing Hearing is in your best interests." Exhibit A1.

8) I, Justin M. Isaac, asked Latuga if I could get someone to investigate so that even though I was guilty of the sale to Davis on September 12, 2018 and the attempt on October 11 that this does not mean that I was "Cali", does not mean the Antonella was a mule, and did not mean that the statements of Dante Davis are all true. Latuga said that it would not be necessary because I am facing the Mandatory Minimum of 10 years and the only way to break the barrier is the "Safety Valve" provision or full cooperation. Latuga from the beginning effortlessly did not show care to my concerns of the information being alleged affecting me in the plea based on its "open-door" and blanket approached implications.

9) I, Justin M. Isaac, state before the plea Latuga stated: "Unfortunately. the biggest reason to plead is to gain the benefit of having (1) acceptance of responsibility and (2) the potential for the Safety Valve - the mechanism in which the federal law permits you to be sentenced under the mandatory minimum of ten (10) years." This was the repeated stance by Latgua. Exhibit A3 pg 1... then followed "Contesting the Government's case and evidence now in plea, or later at sentencing, will inevitably put and benefits of a plea at risk -- including "acceptance" and a potential "safety valve". Id. at ¶4.

10) I, Justin M. Isaac state that Latuga went with what "the Government believe(s)[d], as his theory the whole time and failed to establish his his own fact-finding operation to get an understanding of the complex circumstances that stood to harm me in preparation for sentencing or due to not stipulating the correct plea criteria. be set per his results of reliable adversarial testing to the government's proposed facts "outside of September 12, 2018 and October 11, 2018.

11) I, Justin M. Isaac state that on or about August 12, 2018, Counsel Counsel came to me and told me that he had reached a deal with the Government and that I had to act fast or it would be the last deal before the government pulled out of plea negotiations. Latuga said:

He had a discussion with the Government, first that the government knew that the transporting drugs in trucks and money amounts were not accurate and would be removed from accusation and the statement of facts, he informed me that the government did not want to a pre plea proffer Safety Valve, he said "they want to see a commitment from you with a plea of guilty first and I have arranged for you to do a Safety Valve debrief after the hearing" ( this is almost as best as I can recall his exact words).

12) I, Justin M. Isaac, state that I asked Counsel can we get the offer in writing and he informed me that "there was no need to put the Safety Valve agreement in writing before the plea because 'the deal' was worked out"... and besides they (the goverment) won't do it, they don't want a queen for a day, and they need to know that you have committed to aoplea before any other movement. The government will remove the heroin from the charge and charge you with a new criminal information that you have accept. Then after they will arrange for transport and you'll have a Safety Valve debrief.... that's how they want it, it's your best bet this is what you wanted."

13) I, Justin M. Isaac, state accepted Latuga's proposal, and made a decided that his advice to not challenge the issues of weight, or that my character was misrepresented as "Cali", and leave the SOF where it stood because once again, Counsel reiterated that it was unlikely that those statements would be used against at sentencing, and because I was up for the Safety Valve reduction there was no more time to cut off so challenging anything at this point "in the government's plea was not smart.

14) I, Justin M. Isaac, state that there was no reason for me to mention the offer of the Safety Valve at the Change of Plea Hearing because I was already informed by Latuga that it was under seal. However at the to make sure and double check I asked the Judge to give me a second. I hereby adopt the passage of words in the Memorandum in Support on page 7 lines 15 - 25 herein.

15) I, Justin M. Isaac, state on the day I pled. I suddenly received a letter from later the same evening from Latuga saying that "today I plead guilty........nothing is promised.... and I'd hear from him soon. This gave me a red flag immediately because he did not ever use this word at any point before I plead guilty, however I regarding it as just another one of his letters that attempted to cover his bases.

16) I, Justin M. Isaac, state that I attempted to contact Latuga for weeks after I pled guilty, which can be verified from my phone calls at Tidewater Regional Jail, and was very interested in learning when my Safety Valve pick up was going to occur. My PSR interview happened on August 26, 2018 with Counsel present. Prior to the hearing I was advised not to discuss any details of the case and the Counsel would be there to make sure that this did not happen also. I was told the questions would be rather routine and about me and my family and to just answer as clear as you can.

17) I, Justin M. Isaac, state the months of September and October past and I received a letter with the first proposed PSR and I phoned Latuga to no avail. Days later I received another letter dated November 11, 2019 which was not of the deal that Counsel used to get me to pead guilty, which one of the lines read:

> "Probation and Parole.......'discovered an interview with Davis dated 9/28/18 that puts more drug weight on Isaac"... "new total off[ense] level is 35. His custody range is now 168-210 months..."...
>
> **Obviously, the PSR, the new addendum being filed, and the enhancement for Role in the Offense places you in a different position regarding sentencing and your next steps**...A Role in the Offense enhancement makes you ineligible for any Safety Valve --...." SEE EXHIBIT A5

I did not know what was going on or how to receive this letter from Counsel because to my knowledge I was to just sit and wait for my pick up, and Safety Valve and my commitment as request was shown.

18) I, Justin M. Isaac, state when Counsel came to see me I requested that I see all of his communications with the government and evidence of the deal that he made for me to plea. Counsel did not send or give me the information the occasions that he came to see me in Jail. Finally on 11/28/2019 I wrote Latuga a letter that reads:

> "Multiple times prior...I have asked for the copies of all communications with the United States Government concerning my case in its entirety... I do not agree with your recollection of events, **I do agree that I must now move forward in a manner of transperancy with all parties.** As of now I simply request you hand over the communications that lead to my committed action of a plea". SEE EXHIBIT J.

4

19) I, Justin M. Isaac, state that Counsel moved to withdraw from counsel after I demanded to see the information that he issued to me to plea. On December 2, 2019 Counsel sent me a letter saying: "it would take some time to populate this requested communications....." Exhibit A6.

20) I, Justin M. Isaac, state that I was transported for a hearing on December 19, 2019 that I was unprepared to litigate once there was a conflict of interest declared between counsel and me.

21) I, Justin M. Isaac, state that at the beginning of the Motion To Withdraw Hearing Latuga handed me a thick manilla envelope and said "here that's what you wanted." I was unable to go through the information at the hearing, and I made a notice of it to Judge Allen stated:

THE DEFENDANT: Well, I mean, I don't, I have no Idea if he's doing it or not. He's just giving me that -- I asked him for the communication between him and the DA so I could verify everything he was telling me. He just gave it to me. So I don't know if everything he was telling me was true or false, it just turned out that what he says --like when I told him, hey you remember you said this, "oh,.I don't recall that [Latuga] So the unsure answers made me feel a little bit of uncertainty and trust between me and the attorney, correct.....and I did not want a continuance on the sentencing because I had every expectation to just tell you exactly what was going on." MTW at 9 lines 10-22

22) I, Justin M. Isaac, state that I did not have an awareness of what to say at the time of the MTW because I was still in shock of the proceedings and attempt my best in that moment to illustrate that there was an issue between what was told to me and what did not happen by my Counsel and the Government's doing or undoing. However the proposition was not made up and Exhibit Batch C (C2, C10-C11) is proof of this inducement criteria.

I, Justin M. Isaac, declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the above stated FACTS are True and Correct.

5

Executed on This __4__ Day of December, 2023.

Respectfully Submitted,

*[signature]*

Justin Michael Isaac, **PRO SE**

77516-112

Federal Correctional Institution

Lompoc Low

3600 Guard Rd

Lompoc, CA 93436

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT of VIRGINIA
Norfolk Division

JUSTIN MICHAEL ISAAC,       )
            Petitioner      )
                            )
        vs.                 )      **Criminal Case No.:**
                            )      **2:18cr00158**
UNITED STATES OF AMERICA    )
            Respondent      )
_____)

**AFFIDAVIT OF JUSTIN M. ISAAC [PETITIONER]**

I, JUSTIN M. ISAAC, depose and state that the following FACTS are True and Correct under penalty of perjury, TO WIT:

2) I, Justin M. Isaac, state that this affidavit does also serve as a Declaration supporting my §2255 and Memorandum in Support.

3) I, Justin M. Isaac, state the facts in I through VI in the Memorandum In Support of §2255 Motion to vacate, set aside or correct sentence are hereby adopted herein.

4) I, Justin M. Isaac, that I retained S.W. Dawson as Counsel on or about December 7, 2020 to represent my defense private in the case.

5) I, Justin M. Isaac, state that I allege, based upon information and belief, that privately retained Counsel was CONSTITUTIONALLY INEFFECTIVE.

6) I, Justin M. Isaac, state that Mr Dawson charged a nominal fee of $1000 to meet for 1 hour and to evaluate my case.

7) I, Justin M. Isaac, state that I advised Counsel, Dawson, that previous Counsel, Brian Latuga had refused to investigate the case for a factual basis of actual conduct, refused to severance the activity between Dante Davis, Antonella Barba and Justin M. Isaac, from the operation of drug activity relating to the separate target of the investigation Christopher "Rawl" Stennet, and/or refused to challenge the Government's evidence and witness statements from Dante Davis

8) I, Justin M. Isaac, state that I gave all of the emails between Latuga and AUSA Mitchell, correspondence to me from Latuga, and discovery

1

material I had to Dawson. He was made aware of everything that I stated conflicted my plea signing and later PSR attributions.

9) I, Justin M. Isaac, state that Dawson left Tidewater Jail with the discovery material and returned a short few days later (possibly 48hrs) to meet with me with news that he found something that could work and would be able to take my case and render his services due to what he found. He stated " Man this Latuga really did a number on you", and "you should look in to him after this is over...not to much experience this guy". I was asked to make a $4,000 payment to gain his expertise.

10) I, Justin M. Isaac, state that Dawson, also made the same statments and of the like to Heather Schmeltzer my outside of Jail contact and person responsible for payment of services, alleging that he's got it all figured out and with payment he can fix it all. After I discussed Dawson's "talk" with Heather we decided to pay the money for what he represented as the best to fix all of the problems he found.

11) I, Justin M. Isaac, state that once this payment was paid S.W. Dawson represented a totally different personality, demonstrating a very bully like attitude and rather mean spirited and short in response don't question me atmosphere to which I routinely had to ask him if "there was a problem with anything in the case that I am being acused of that offends him?"

12) I, Justin M. Isaac, state that Dawson did not try to investigate throroughly, and did not pursue any of the conflicts in my original agreement with him discussed in the matter of him being retained, after being fully paid to take my case.

13) I, Justin M. Isaac, state that S.W. Dawson was advised that previous Counsel, Brian Latuga, misled me to believe that asserting much of the facts of my involvement was not necessary and it was unlikely that most of the elements and statements I declared false even if provable would be used against me at sentencing, so challenging them made no sence; this includes distinctly telling Dawson that my name is not "Cali", that is some other person and that I was never fronting drugs in any capacity to Dante Davis for redistribution, I don't know or have ever met Arthony Sommerville and I don't know and have never been in any existence with Christopher Rawl Sternet and his business activity. Dawson informed me "it doesn't this stuff happens to you guys all the time, no one care and it is what it is"..."It doesn't

2

matter because the government thinks you are, so you are"..."I'm not going to waste my time, what I'm going do is tell you I think your hit", .."All that Safety Valve stuff is out of the question, we got damage control we are looking at.....I spoke to the government you got one option".

14) I, Justin M. Isaac, state that I asked Dawson to withdraw my plea and I will just take it to trial to get the facts straight. Dawson told me "NO" and he would not do so and that I was going to get 10 10 years if I listened to him. Dawson said that because of it being COVID that it would look good right now to get sentenced being willing to help the Court be safe in the proceedings, he reiterated "I spoke with the Government, what your going to do is not delay the Courts and more, and your a first-time offender with no violent history your going to get the mandatory minimum of 10 years, that's it"

15) I, Justin M. Isaac, state that I repeatedly asked Dawson "well what about the accusations in the PSR, I need to fix my name, and the role enhancements and deal with the outrageous weights". Dawson said "he would take care of it, don't worry... but this is what your going to say at sentencing". Dawson took a pen and paper and scripted what is now known to the record as Exhibit B.

16) I, Justin M. Isaac, state that I took the paper and informed Dawson to please make sure that before he submits his sentencing information that he sends me the document first for my approval and that I still want him to challenge and object to the PSR before we get to sentencing because I didn't feel right with all of the false and conflicting information presented. Dawson stated that he would make sure to do so and if I play by the rules and cause a hectic situation for the court then it would go just like he said it would, so I shout "think about what's on that paper, and get this done".

17) I, Justin M. Isaac, state that my representations of S.W. are that I was rushed into sentencing by a lawyer whose words in attraction of his case evaluation few and further retainer interest told me he saw the problems and would address them and that "he was on my side", but who's actions after full retainer payment showed he just wanted to get me sentenced and moved on to the next case.

18) I, Justin M. Isaac, state that it was only at sentencing did I learn

3

that Dawson did not even attempt to informally challenge the PSR with the PO or rather did not put any objections into his independently determined sentencing position. When I realized that Dawson was serious about his commands I made the comment in the court at sentencing:

THE DEFENDANT: Obviously, I disagree with the amounts, the weights, and the enhancements, I don't think that they were appicable. But that's just some questions that I had for my lawyer."
SENTENCING TRANSCRIPT 13 lines 12-15

I state to the court that because I told him to object and he did not it demonstrated that he was serious about what he instructed me to do.

19) I, Justin M. Isaac, state that at sentencing I felt uncomfortable reading what Dawson scripted for me to say but also conflicted not to destroy what S.W. Dawson represented as a guarantee of 10 years in sentence for no longer objecting (because it didn't make sense, EXHIBIT B.) Still I attempted to alert the Court to my desire to object.

20) I Justin M. Isaac, state the record reflects me saying "No no" when the court asked "Do we need to continue this sentencing", SENT TR 13 lines 6-9.; and hesitant to do any delay because it was rather pressure that I don't not cause a delay to the Court and it was an element of the guarantee or result of getting the spoken of sentence. This is not an easy subject but rather a rightful feeling from the pressure of the language and the direct context in which these stipulations were given to me happened.

21) I Justin M. Isaac, state that in the Private Room that the Judge placed us in S.W. Dawson yelled:

"What the hell are you doing, you're blowing your deal..."
I herein incorporate the reflect verbal passage on page 15 of the Memorandum In Support of §2255 accompanying this affidavit.

22) I, Justin M. Isaac, state that it was unnerving and I caved into the pressure of his command, not knowing he was just guessing at the results, and it was not supported by the Court or Government at that point. I have never been in this position with the law, and did not have his attorney privileges to depend on making the right choice. I ultimately went back into the court and did as instructed, which I know now even I had got the 10 years was only what Dawson insisted I do for his own personal interests.

4

23) I, Justin M. Isaac, state that after the hearing I never to spoke to Dawson. When I spoke to Heather after I returned to my pod in Tidewater Regional Jail, I told her "I got 168 months" she replied "I know I just got off the phone with Dawson", I said "He said I would 10 years, what happened?" Heather responded "yea he all of a sudden said nothing's promised". I was sentenced on January 29, 2021, and would like to note that the Court can gain access to the Tidewater Regional Records of my communications to Heather Schmeltzer on "Getting Out Video Visits" and telephone data factually verify this claim.

24) I Justin M. Isaac, state that on the same day of my video sentence, I was delivered a letter that after addressed from S.W. Dawson stating "I spoke with the government, if you want me to assist you further or talk more with the government I would need an extra $2500 in immediate payment".

25) I, Justin M. Isaac, state that I sent word with Heather Schmeltzer to contact Dawson and request that he file my notice of appeal. After never getting conformation I wrote to the courts myself to be proactive about not becoming time barred and missing the date of application expiration.

I, Justin M. Isaac, declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the above stated FACTS are True and Correct to the best of my knowledge and belief.

Executed on This __4__ Day of __December__ 2023

Respectfully Submitted,

_Justin Isaac_
Justin Michael Isaac, **PRO SE**
77516-112
Federal Correctional Institution
Lompoc Low
3600 Guard Rd
Lompoc, CA 93436

5