```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
                       Norfolk Division
```

**JUSTIN MICHAEL ISAAC,**

       Petitioner,

v.                                              **Civil No. 2:23cv643**
                                                              **Criminal No. 2:18cr158**

**UNITED STATES OF AMERICA,**

       Respondent.

## OPINION AND ORDER

This matter is before the Court on Justin Michael Isaac's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255. ECF No. 343. Petitioner's motion, filed pro se, asserts that his former lawyers, Brian Latuga, S.W. Dawson, and Laura Tayman, were all independently constitutionally deficient in representing Petitioner. Id. The Government filed a brief in opposition, ECF No. 353, and Petitioner filed a reply brief, ECF No. 360. For the reasons outlined below, Petitioner's § 2255 motion is **DENIED**.

### I. FACTUAL BACKGROUND

In February of 2019, a grand jury returned a superseding indictment charging Petitioner with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, 1 kilogram or more of heroin, and 400 grams or more of fentanyl. ECF No. 7. Petitioner subsequently waived indictment and pled guilty to a separately filed criminal information charging him

with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). ECF No. 152, at 1. Due to the drug quantities involved, Petitioner faced a mandatory minimum of ten years imprisonment and a maximum of life imprisonment. ECF No. 156, at 1. Brian Latuga was Petitioner's counsel from his initial appearance through his guilty plea proceedings.

After Petitioner pled guilty, but before he was sentenced, Mr. Latuga filed a motion to withdraw as counsel. ECF No. 250, at 1. The motion to withdraw stated that Petitioner had consistently both "inferred and stated a lack of confidence [in Mr. Latuga] such that Counsel can no longer effectively represent [Petitioner]." ECF No. 251, at 1. Ultimately, the Court granted the motion, finding that there was a severe breakdown in the relationship between Petitioner and Mr. Latuga. Id. at 15-17. Petitioner later retained S.W. Dawson as counsel, who represented Petitioner through his sentencing. ECF No. 297.

Petitioner's Presentence Investigation Report ("PSR") calculated his Guideline base offense level based on the quantity of drugs attributed to him. ECF No. 308, at 11. Additionally, he received a 2-level enhancement for being a manager or supervisor, and a 3-level credit for acceptance of responsibility. Id. Petitioner's resulting advisory Guideline range was 168 to 210

2

months' imprisonment. Id. at 20. At the conclusion of the sentencing hearing, Petitioner was sentenced to 168 months' imprisonment. ECF No. 305, at 2.

Petitioner filed a timely direct appeal to the United States Court of Appeals for the Fourth Circuit. ECF No. 339. Petitioner was represented by Laura Taymen on appeal. Id. at 1. Following his unsuccessful direct appeal, Petitioner filed the instant § 2255 motion alleging multiple counts of ineffective assistance of counsel based on his three lawyers' supposed failures to "investigate issues [and] know the law." ECF No. 343, at 10. Petitioner asserts that but for his lawyers' errors, he would not have been sentenced to a 168-month term of imprisonment. ECF No. 343, at 4-5, 7-8.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge their conviction or sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence or conviction] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Ineffective assistance of counsel claims, a type of claim alleging a constitutional violation, are appropriately raised for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500,

504 (2003). A petitioner must prove the asserted grounds for relief, including ineffective assistance of counsel claims, by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Analyzing the Sixth Amendment, the United States Supreme Court has held that the right to counsel is the right to "effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 685 (1984). To obtain § 2255 relief based on an allegation of ineffective assistance, a petitioner must normally establish that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the petitioner. Id. at 687-88. If a petitioner fails to prove either one of the prongs of the Strickland test, then the Court need not evaluate the other prong. Moore v. Harde, 723 F.3d 488, 500 (4th Cir. 2013).

With respect to performance, the Constitution does not guarantee errorless representation; rather, deficient performance requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment.

4

Id. at 689. So only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As "it is all too easy" to challenge an act, omission, or strategy after it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight" by "evaluat[ing] the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Ultimately, the "basic lesson" of Strickland is not just deference but high deference, which allows attorneys to "be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014).

Considering Strickland's prejudice prong, a petitioner must affirmatively prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

When a petitioner's ineffective assistance of counsel claim challenges the voluntariness of a guilty plea, the prejudice prong of the Strickland test is "slightly modified." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). In this

5

circumstance, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

Finally, when challenging the effectiveness of counsel, "absent clear and convincing evidence to the contrary, a [] [petitioner] is bound by the representations he makes under oath during a plea colloquy." Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). Unless extraordinary circumstances are present, the "truth of sworn statements made during a Rule 11 [plea] colloquy is conclusively established." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Thus, district courts typically dismiss any § 2255 claims that rely on allegations that contradict a petitioner's sworn statements made during a Rule 11 hearing or other criminal proceeding held in open court. Id.; see Harrell v. United States, No. 4:20cr45, 2022 WL 3974144, at *4 (E.D.N.C. Aug. 31, 2022) (holding that if a defendant's sworn statement during arraignment or sentencing contradicts the claim that counsel was ineffective, the sworn statements bind the defendant).

### III. DISCUSSION

#### A. Claims against Brian Latuga

Petitioner advances three primary arguments in support of his ineffective assistance of counsel claim against Mr. Latuga:

6

(1) Mr. Latuga colluded with the United States Attorney's Office to "defraud" Petitioner; (2) Mr. Latuga conducted a lackluster investigation and failed to challenge certain facts in the written Statement of Facts ("SOF") that Petitioner agreed to at the time of his guilty plea; and (3) Mr. Latuga induced Petitioner to plead guilty by promising that Petitioner would be sentenced to the mandatory minimum or that the "safety-valve" would apply to him.[1]

### 1. Collusion with U.S. Attorney's Office

Petitioner's first claim alleges that Mr. Latuga colluded with the U.S. Attorney's Office to "defraud" Petitioner. "Allegations in a § 2255 motion may be summarily dismissed when they are 'so palpably incredible, so patently frivolous or false as to warrant summary dismissal.'" United States v. Barnard, No. 1:15cr60, 2017 WL 1393055, at *11 (E.D. Va. Apr. 14, 2017) (quoting United States v. White, 366 F.3d 291, 296-97 (4th Cir. 2004)). The Court in Barnard held that a claim alleging a conspiracy between the petitioner's attorney and the Government was incredible and purely speculative because the petitioner provided no supporting evidence. Id. at *11. This is analogous to the case at hand.

Petitioner, despite providing the Court with various emails exchanged between Mr. Latuga and the Assistant United States

---

[1] Petitioner's § 2255 motion divides his claims into multiple subsections, and related subclaims are combined by the Court for ease of analysis. Additionally, the Court has endeavored to address additional allegations advanced primarily in Petitioner's sworn affidavits.

7

Attorney ("AUSA") assigned to Petitioner's case, does not point to any non-speculative evidence of collusion. Moreover, the content of Petitioner's own exhibits undermine his assertion of collusion as these contemporaneous records suggest that Mr. Latuga was engaging in arms-length discussions with the Government about the issues Petitioner had with the SOF. ECF No. 343-3, at 16, 22-23; see also ECF No. 157, at 2-3 (reflecting in footnotes 1 and 3 that a plea deal was reached even though certain drug weights were disputed). Because Petitioner offers no evidence of any conspiratorial discussions and fails to even identify a specific issue that was purportedly the product of collusion, this claim is so patently frivolous that it is denied.[2]

### 2. Lack of Investigation and Failure to Challenge SOF

Petitioner's second claim asserts that because Mr. Latuga failed to adequately investigate and challenge certain facts in the SOF, Mr. Latuga rendered ineffective assistance of counsel. ECF No. 343-1, at 1. To be considered reasonable and competent, defense counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be

---

[2] Petitioner's reply brief argues, for the first time, that he would not have pled guilty had he known of the alleged collusion. Petitioner also alleges for the first time in his reply that the Government "premeditated" a plan to breach the plea agreement. Petitioner, however, again fails to identify how the unsubstantiated collusion impacted his case, nor does he identify the purported "breach" that was premeditated. These late-advanced reply brief conclusory claims are rejected both on their merits and due to their timing. See Zinner v. Olenych, 108 F. Supp. 3d 369, 398 (E.D. Va. 2015) ("Typically, courts will not consider an argument raised for the first time in a reply brief.").

developed. Stevens v. Johnson, 575 F. Supp. 881, 885 (E.D.N.C. 1983); see Sneed v. Smith, 670 F.2d 1348, 1353 (4th Cir. 1982). And to be able to prevail on an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must specify "what an adequate investigation would have revealed." Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990). Conclusory allegations alone do not overcome the presumption of counsel's competency. Jones v. United States, No. 1:05cr2491, 2012 WL 925007, at *7 (W.D.N.C. Mar. 19, 2012).

Here, Petitioner does not point to any record evidence suggesting that Mr. Latuga failed to conduct a sufficient investigation into the factual and legal details of his case. Rather, Petitioner relies solely on conclusory allegations. Petitioner also fails to establish what an adequate investigation into the facts surrounding his case would have revealed.

Additionally, Petitioner's assertion that his lawyer should have challenged the SOF contradicts the sworn statements he made during his Rule 11 colloquy. When asked by the court during this proceeding, "Mr. Isaac do you agree that the statement of facts is accurate?" Petitioner responded "Yes." ECF No. 314, at 22. When asked by the Court, "Is there anything in the statement of facts that you disagree with?" and "Is there anything in the statement of facts that you object to or take exception to?" Petitioner unequivocally responded to both questions, "No." Id. at 22-23.

9

Petitioner is bound by these statements he made under oath during his Rule 11 colloquy. Lemaster, 403 F.3d at 221-22.

Because Petitioner's speculative claim that counsel should have challenged the SOF directly contradicts his prior sworn statements agreeing with everything in the SOF, Petitioner fails to demonstrate that Mr. Latuga performed outside the wide range of reasonably competent assistance. Strickland, 466 U.S. at 688-89. Additionally, because even at this late stage in the case Petitioner fails to identify what an adequate investigation into the facts would have revealed, he fails to demonstrate Strickland prejudice. Thus, this claim is denied.

### 3. Inducement to Plead Guilty by Promise of Mandatory Minimum or Safety-Valve

Petitioner's final claim against Mr. Latuga asserts that Petitioner was induced to plead guilty by the promise that he would be sentenced to no more than the 10-year mandatory minimum, and that the "safety-valve" may permit him to serve a sentence of less than 10 years.[3] ECF No. 343-1, at 2.

As previously explained, the "truth of sworn statements made during a Rule 11 colloquy is conclusively established." Lemaster, 403 F.3d at 221-22. At Petitioner's Rule 11 hearing, Petitioner stated that he understood that he was facing a 10-year mandatory

---

[3] A defendant convicted of a drug trafficking crime can benefit from the statutory "safety-valve" and receive a sentence below the mandatory minimum if five requirements are met, to include the requirement that the defendant was not an "organizer or leader" of criminal activity. 18 U.S.C. § 3553(f).

10

minimum sentence and a maximum of life imprisonment, and he confirmed under oath that neither the attorney for the United States, nor his own attorney, "made any promise of leniency or <u>any promise of any kind</u> in return" for his guilty plea. ECF No. 316, at 15 (emphasis added).[4] Petitioner swore that he understood that "until . . . a presentence report is completed, it's impossible for . . . [his] lawyer to know precisely what sentence range will be provided by the guidelines." <u>Id.</u> at 17. Petitioner's § 2255 claim asserting that his decision to plead guilty was predicated on his lawyer's promise that he would receive a certain sentence directly conflicts with Petitioner's prior sworn statements. As such, Petitioner's ineffective assistance of counsel claim is denied as his allegations are "patently frivolous or false." <u>White</u>, 366 F.3d at 296-97.[5]

---

[4] The contemporaneous letters and emails provided by Petitioner as exhibits demonstrate that Mr. Latuga made certain pre-plea statements to Petitioner about the <u>potential</u> to secure a sentence at or below the mandatory minimum; however, Mr. Latuga also clearly indicated that his statements regarding sentencing were merely "estimates" and discussed only the "<u>potential</u> safety valve" benefit. ECF No. 343-3, at 3, 10 (emphasis added).

[5] A review of Mr. Latuga's letters suggests that he may have made one statement that underplayed the extent of the safety-valve benefit, see ECF No. 343-3, at 13 (stating that the safety-valve only benefits individuals whose Guidelines fall below the statutory minimum); however, this statement was made <u>after</u> Petitioner pled guilty and was coupled with the legally accurate statement that Petitioner could not qualify for the safety-valve in light of his leadership role. ECF No. 343-3, at 13. Even assuming that this first statement was not entirely accurate, it is a minor matter that is insufficient to demonstrate constitutionally deficient performance. Moreover, the statement could not have prejudiced Petitioner's plea decision as it was made nearly three months after Petitioner pled guilty. <u>Id.</u>

11

### B. Claims against S.W. Dawson

Petitioner advances three ineffective assistance of counsel arguments against Mr. Dawson: (1) Mr. Dawson failed to object to incorrect facts in the PSR, failed to sufficiently investigate, and promised Petitioner that he would be sentenced to the mandatory minimum; (2) Mr. Dawson forced Petitioner to maintain his guilty plea at sentencing; and (3) Mr. Dawson failed to raise an ineffective assistance of counsel claim against Mr. Latuga at sentencing.

#### 1. Failure to Object to Challenge Facts in the PSR[6]

Petitioner asserts that Mr. Dawson failed to object to certain facts in the PSR, failed to sufficiently investigate said facts, and misled Petitioner into not objecting to these facts by promising that Petitioner would be sentenced to the mandatory minimum. As previously discussed, the "truth of sworn statements" made in open court is "conclusively established." Lemaster, 403 F. 3d at 221-222. Here, Petitioner had the opportunity to raise

---

[6] Petitioner asserts various other complaints against Mr. Dawson and Mr. Latuga both in his § 2255 motion and accompanying affidavits. ECF Nos. 343, 343-3. Some of these include: failing to object to untimely entry of "new discovery" into a post-plea PSR, the reliability of a cooperating codefendant, failure to object to his role enhancement, Petitioner's relationship or lack thereof with his alleged codefendants, and the identity of "Cali," the alleged leader of the drug trafficking operation. See ECF Nos. 343, 343-2. These complaints are presented with varying levels of specificity and clarity. Though the Court has not squarely addressed each accusation in this opinion, it has certainly considered them all and has found that none of them meet both prongs of the Strickland test. Consequently, to the extent these additional grievances should be viewed as subclaims, they are denied.

objections to the PSR or Mr. Dawson's investigation at sentencing, and in fact did initially voice some concerns.[7] See ECF No. 318, at 12-13 (indicating that Petitioner disagreed with "some stuff" in the PSR and questioned whether certain enhancements were applicable). After the Court took a brief recess to allow Petitioner to confer with Mr. Dawson, Petitioner ultimately decided not to pursue any challenges to the PSR. When questioned by the sentencing judge, Petitioner confirmed under oath that there were no errors in the PSR, that it was an accurate reflection of his history and characteristics, that he agreed with the base offense level, the two-level role enhancement, his criminal history category, that no one was forcing him to agree with any of the above, and that all of the aforementioned was true beyond a reasonable doubt. ECF No. 318, at 17-18; see also Coogle v. United

---

[7] It is clear from the transcript that the sentencing judge demanded clarity on these matters and provided Petitioner with every opportunity to object to the PSR Guideline calculation:

> COURT: [] We're not rushing this hearing, Mr. Isaac. If you don't agree with the drug weights, then let your attorney know. And if you don't agree with that two-level role enhancement because you're a leader of a drug organization that was from California to the East Coast, you let your attorney know. And we will recess - that's no problem at all - your attorney can file his paperwork with his guidelines section and his case law, [the AUSA] will weigh in with his guidelines and his case law, we will have your hearing on the objections, I will rule on the objections, and then we will hold your sentencing. So there is no problem. We do this all day long every day. There's no problem at all. Do you understand what I just said to you, Mr. Isaac?
>
> THE DEFENDANT: Yes, yes, yes, ma'am.

ECF No. 318, at 16.

13

States, No. 2:17cr167-01, 2020 WL 8484871, at *12 (S.D.W. Va. Feb. 11, 2020) (finding that the Petitioner's testimony that the PSR was factually correct under oath, precluded any finding that his lawyer was ineffective for failing to challenge certain portions of the PSR). Based on these clear and express statements, Petitioner is bound by his sworn representations. Therefore, the Court finds that Petitioner fails to carry his burden to demonstrate that Mr. Dawson's alleged promise of a mandatory minimum sentence is what forced him not to object to the PSR or Mr. Dawson's investigation. Fields, 956 F.2d at 1299. Thus, his § 2255 claim fails under Strickland's first prong.[8]

### 2. Pressure to Plead Guilty

Petitioner's next claim asserts that Mr. Dawson forced him to maintain his guilty plea at sentencing. Absent clear and convincing evidence to the contrary, Petitioner is bound by his prior sworn statements. Fields, 956 F.2d at 1299; Lemaster, 403 F.3d at 221-22. Petitioner testified during the sentencing hearing that his guilty plea was not the product of force and was made freely, knowingly and intelligently. ECF No. 318, at 9, 18.

---

[8] Assuming for the sake of argument that Petitioner is not bound by his sworn representations, even at this late stage of the case, he fails to offer evidence suggesting that the facts in the PSR are not accurate, and thus also fails to demonstrate Strickland prejudice. For example, as to the leadership role, Petitioner had already sworn at the time of his plea that he directed a drug courier to deliver fentanyl, a fact that likely undercut Mr. Dawson's ability to challenged Petitioner's leadership role. ECF No. 157, ¶¶ 8-10.

14

Moreover, Petitioner unambiguously reaffirmed his desire to plead guilty at sentencing. ECF No 318, at 9.[9] The truth of these statements is, therefore, conclusively established and the Court finds no reason to doubt their truth here.

The only potential evidence Petitioner offers to rebut this presumption of truth is his claim that Mr. Dawson exclaimed to him, during the recess the Court took during sentencing, "What the hell are you doing? You are blowing your deal," and that this outburst was "unnerving." ECF No. 343-2, at 10. Even assuming the truth of such accusation, it is not evidence of force or compulsion or that Mr. Dawson's actions fell below the objective standard of reasonableness under the first Strickland prong. "It is not enough that trial counsel's performance may have "deviated from best practices or most common custom" as "the question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms.'" Parks v. Ames, No. 2:20cv691, 2021 WL 4484998, at *11 (S.D.W. Va. Mar. 25, 2021) (quoting Strickland, 466 U.S., at 690). Although Mr. Dawson's purported outburst might have been a deviation from the best way

---

[9] The following section of the sentencing transcript is instructive:

> THE COURT: [] Do you still want to plead guilty?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Is anybody forcing you?
> THE DEFENDANT: No one – no, no.
> THE COURT: And are you doing so freely, knowingly, and intelligently?
> THE DEFENDANT: Yes.

ECF No. 318, at 9.

15

the issue could have been explained, it does not rise to the level of incompetence under the prevailing professional norms and does not suggest "coercion." Rather, consistent with Petitioner's sworn statements, and the advice of both Mr. Latuga and Mr. Dawson, the record reflects that Petitioner voluntarily elected not to challenge the drug weights and other factors in the PSR to preserve a credit for acceptance of responsibility and with the hope of securing a favorable sentence. ECF No. 343-3, at 11. While it is all too easy to challenge this approach after it has proven less effective than Petitioner hoped, he fails to meet his burden under the first Strickland prong.[10]

### 3. Failure to Raise Ineffective Assistance of Counsel Claim Against Mr. Latuga

Petitioner's final claim against Mr. Dawson alleges that Mr. Dawson was constitutionally ineffective for failing to raise an ineffective assistance of counsel claim against Mr. Latuga. ECF No. 343-2, at 8. Petitioner appears to assert that Mr. Dawson should have raised this claim at his sentencing hearing. However, Petitioner fails to demonstrate a procedural mechanism for raising this type of challenge at sentencing and the Court cannot discern what course of action Petitioner suggests that Mr. Dawson should have taken. Without more, this claim is denied because Petitioner

---

[10] Petitioner does not meet his burden and satisfy the first Strickland prong, therefore the Court need not address the second Strickland prong. Moore, 723 F.3d at 500.

16

fails to demonstrate that Mr. Dawson's behavior fell below the objective standard of reasonableness required by the first Strickland prong.

Even if this Court were to engage in the conjecture necessary to evaluate the merits of Petitioner's claim, it still fails. The only plea-related challenge this Court could foresee Mr. Dawson raising at sentencing would be a motion to withdraw Petitioner's guilty plea due to the alleged ineffective assistance of counsel of Mr. Latuga. However, Petitioner himself had multiple opportunities at sentencing to express his desire to no longer persist with his guilty plea. ECF No. 318, at 9, 16-18. Rather than doing so, Petitioner expressly reaffirmed his desire to plead guilty during his sentencing hearing. Id. at 9. As Petitioner made these statements under oath in open court, he is bound by his sworn assertions. Fields, 956 F.2d at 1299.[11] Accordingly this claim is denied.

### C. Claims against Laura P. Taymen

Petitioner's final claim asserts that his appellate attorney, Ms. Taymen, was constitutionally deficient for failing to raise ineffective assistance of counsel claims against Mr. Latuga and Mr. Dawson on direct appeal. ECF No. 343, at 4, 6-7, 9. Claims

---

[11] Although Petitioner alleges that Mr. Dawson told him that Mr. Latuga "did a number on him" and "should be investigated," those statements alone (even if true) are not an indication that an ineffective assistance of counsel claim could or should have been brought at that time. ECF No. 343-2, at 10.

17

of ineffective assistance of counsel generally are not cognizable on direct appeal. United States v. King, 119 F.3d 290, 295 (4th Cir.1997). Rather, to allow for adequate development of the record, a defendant must bring ineffective assistance claims in a § 2255 motion. Id. An exception exists, however, where the record "conclusively establishes" ineffective assistance. United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006).

Here, Petitioner fails to identify any evidence on the face of the record as it existed at the time of his appeal that Mr. Latuga or Mr. Dawson rendered ineffective assistance, much less conclusively establishing such ineffective assistance. As a result, this claim was not cognizable on direct appeal, and Petitioner therefore fails to demonstrate that Ms. Taymen's decision not to raise such a claim was objectively unreasonable or that he suffered resulting prejudice. Strickland, 466 U.S. at 688-89, 93. Consequently, Petitioner's claim against Ms. Taymen is denied.

## IV. CONCLUSION

For the reasons explained above, Petitioner's § 2255 motion is **DENIED** on the merits. ECF No. 343. Finding that the basis for denying Petitioner's § 2255 motion is not debatable, a certificate of appealability ("COA") is **DENIED**. 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a COA is denied by this Court, he may seek one from the Fourth Circuit. Fed. Rule App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a COA from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek a COA by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to Petitioner and to counsel for the Government.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 19, 2024